NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2044-23

NATALIA KRONFELD,

       Plaintiff-Appellant,

v.

ELLIOTT MALONE and
LAW OFFICES OF ELLIOTT
MALONE, ESQ., LLC,

       Defendants/Third-Party
       Plaintiffs-Respondents,

v.

ROMAN GAMBOURG,
GAMBOURG & BORSEN,
LLC, a/k/a GAMBOURG
LAW GROUP, and ELENA
GAMBOURG,

       Third-Party Defendants.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 1, 2025**
>
> **APPELLATE DIVISION**

Submitted September 9, 2025 – Decided October 1, 2025

Before Judges Gilson, Firko, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4946-19.

Lawrence H. Kleiner, LLC, attorney for appellant (Lawrence H. Kleiner, of counsel and on the briefs).

Tompkins, McGuire, Wachenfeld & Barry, LLP, attorneys for respondents (Matthew P. O'Malley, of counsel and on the brief).

The opinion of the court was delivered by

VINCI, J.A.D.

Plaintiff Natalia Kronfeld appeals from a July 7, 2023 order denying her eighth motion to extend discovery, an August 4, 2023 order denying her motion for reconsideration of that order, and a September 22, 2023 order granting summary judgment in favor of defendants Elliot Malone, Esq. and the Law Offices of Elliot Malone, Esq., LLC. (collectively Malone). We affirm.

We also address the scope of our decision in Hollywood Café Diner, Inc. v. Jaffee, 473 N.J. Super. 210 (App. Div. 2022), to clarify that its limitation on the applicability of the exceptional circumstances standard set forth in Rule 4:24-1(c) applies only when an arbitration or trial date is set administratively by notice prior to the conclusion of the discovery period. We now hold that once an arbitration or trial date is set by a judge in a discovery end date (DED) extension or case management order entered after expiration of the applicable initial period of discovery set forth in Rule 4:24-1(a), no extension of the discovery period may be permitted unless exceptional circumstances are shown.

A-2044-23

# I.

Plaintiff alleges Malone committed legal malpractice in connection with an underlying legal malpractice action against Snyder & Sarno, LLC and individual attorneys of the firm (collectively Sarno), who represented plaintiff in an earlier divorce action filed against her by her ex-husband in 2012.  In 2015, on the eve of trial in the divorce action, the parties reached a settlement agreement that was placed on the record.  Plaintiff was questioned extensively about the settlement agreement and told the court she understood the terms of the agreement and did not want to go to trial.

Following the settlement, plaintiff refused to pay Sarno's legal fees in the amount of approximately $148,000.  Sarno filed a motion in the divorce action to recover its legal fees.  On July 14, 2017, following a multi-day plenary hearing, the court entered an order granting Sarno's fee application in its entirety.  The Family Part judge found plaintiff's testimony, particularly her "professed lack of proficiency in English," was "not credible."  Plaintiff appealed from that order, and we affirmed.  Fradkov v. Kronfeld, No. A-5419-16 (App. Div. Jan. 31, 2019).

In 2016, while the fee application was pending, plaintiff sued Sarno for legal malpractice.  In 2017, after the attorney who filed the malpractice action

changed firms and could no longer handle the case, plaintiff retained Malone. Malone filed an amended complaint alleging Sarno failed to "obtain or investigate evidence to establish the true and complete holdings and valuations of [her ex-husband's] business interests" and "place any accountant in a position to provide a complete, accurate, and up-to-date valuation."

The amended complaint alleged, "without a forensic analysis and complete assessment of [her ex-husband's] holdings, [Sarno] could not properly consider the amount to which [plaintiff] was entitled." As a result, plaintiff did "not receiv[e] by way of settlement or final judgment that to which she was entitled to by way of equitable distribution, alimony[,] and child support."

Following discovery and motion practice, the parties participated in mediation. Prior to the first day of mediation on September 17, 2018, Malone provided plaintiff with a chart of potential settlement amounts ranging from $500,000 to $1.25 million showing expenses, fees, and her anticipated net recovery. During a second mediation session the following week, plaintiff agreed to settle her claims against Sarno for $975,000. She also agreed to pay Sarno $100,000 to resolve the fee dispute, which included the initial award of $148,000 plus approximately $90,000 in additional fees for the plenary hearing.

On July 2, 2019, plaintiff filed this action against Malone. She alleged Malone "failed to do any of the necessary discovery on the multiple marital businesses and . . . ignored [her] multiple requests . . . to undertake discovery on the sale of the company by her ex-husband to Google." Also, one of the financial experts Malone retained, Anthony Ambrosio, failed to include one of her ex-husband's businesses in his report, and Malone failed to correct that error. "As a result, this business was never included in the expert report, mediation, and the settlement." Plaintiff also alleged Malone failed to properly advise her of the tax implications of the settlement and "improperly paid . . . Sarno without [her] authorization."

On September 16, 2019, Malone filed an answer and counterclaim, and plaintiff filed an answer to the counterclaim on October 1. The parties subsequently exchanged written discovery and began conducting depositions.

On October 12, 2020, plaintiff filed her first motion to extend discovery, which was granted on October 30. The DED was extended to March 31, 2021. On December 23, 2020, plaintiff filed her second motion to extend discovery, which was granted on January 8, 2021, extending the DED to June 30, 2021. On April 26, 2021, she filed her third motion, which was granted on May 14, extending the DED to October 28, 2021. Her fourth motion to extend, filed

A-2044-23

February 3, 2022, was granted on February 18, and the DED was extended to June 25, 2022. On April 19, 2022, plaintiff filed her fifth motion to extend, which was granted on May 13, extending the DED to October 23, 2022.

On August 22, 2022, plaintiff filed her sixth motion to extend discovery. On September 9, the court entered an order granting the motion, extending the DED 120 days until February 20, 2023, and scheduling trial for April 24, 2023.

On February 17, 2023, three days before the end of the discovery period, plaintiff filed her seventh motion to extend discovery. The motion sought to extend the DED 120 days to June 20. Malone opposed the motion.

The Civil Presiding Judge heard oral argument on March 23. Plaintiff's counsel argued discovery was complex and "[s]ome of this has gotten delayed [because of his] absence for medical treatment." "We need to complete the dep[osition] of [plaintiff], and then . . . the dep[osition] of . . . Malone, and then we need to serve expert reports, and that gets us to the finish line."

The judge was "a little surprised that after [the] trial date[ was] set in September that there[ was] an application in February to extend discovery." He was "sympathetic to [counsel's] health issues, but . . . [they] had discussions before about" those issues. The judge "permit[ted] the final extension of discovery." He cautioned counsel, "if it do[es not] happen, do[ not] come back."

6

Counsel stated he "understood." The judge entered an order extending the discovery period to June 20, 2023, as requested. Specifically, he ordered "[d]epositions of the parties to be completed by April 6, 2023; . . . [p]laintiff's expert reports be served by May 4, 2023; [Malone's] expert reports be served by June 5, 2023; [and] [e]xpert depositions [be] completed by June 20, 2023." The trial date was adjourned to September 18, 2023.

On June 21, after the June 20 deadline for completion of discovery expired, plaintiff filed an eighth motion to extend discovery. Plaintiff argued "[her] primary counsel's health issues, compounded by COVID[-19,] and the inherent complexity of this case qualify as exceptional circumstances to permit [an] extension of discovery." Plaintiff also contended that "[b]ased on the wording of the March 23 order, it does not appear a discovery end date was set when discovery was extended[.]"

On July 7, after hearing oral argument, the judge entered an order denying the motion to extend discovery supported by an oral opinion and written statement of reasons. He determined:

> this [c]ourt . . . ha[s] been very tolerant of the health issues, but as [the court] had indicated in March at the time [the court] entered an order extending discovery, . . . it was time for this to be done and . . . [the court] thought [it] made it pretty clear then

7

on the record how the [c]ourt felt about what needed to get done.

. . . .

Quite frankly, [the court] made it clear in March, … [it was] going to permit the final extension of discovery, if it do[es not] happen, do[ not] come back. [The court] meant it when [it] said it, and that was the seventh discovery extension. There has now been almost 1,300 days of discovery and, despite these things, . . . they do[ not] get done.

[The court] do[es not] see exceptional circumstances in the face of a trial date. Quite frankly, [the court] see[s] whatever the opposite of that would be . . . . [The court] see[s] . . . a client who certainly did not want to proceed in this case with any sense of urgency or any sense of pace and created continuing delays for all involved, the court[ is] not going to reward that at this point.

So [the court] [does not] see where the exceptional circumstances factors are met. It[ is] unfortunate, but . . . at some point . . . there has to be some effect to orders, and [the court] made it clear then and it was[ not] followed.

In his July 7, 2023 order, the judge explained:

The present application fails to demonstrate exceptional circumstances warranting a further extension which is the standard with a [t]rial [d]ate having been set.

The delays and inability to complete the discovery is the result of the plaintiff's failure to comply and cooperate with the scheduling of depositions . . . .

8

> Furthermore, this is not a basis to extend or an exceptional circumstances standard. Part of what is sought in the request for extension is to conduct another full day of deposition of . . . Malone despite [there] having been two full days already conducted. The timing of the defense deposition was the product of plaintiff's failure to cooperate in the discovery process.
>
> There having been seven [DED] extensions[,] the court does not find exceptional circumstances to warrant the[] relief sought [herein].

Plaintiff moved for reconsideration, reiterating the same arguments and contending her counsel was entitled to a reasonable accommodation because of his health issues. Also, "the extension will not prejudice anyone and we are told there is a civil trial backlog anyway." On August 4, 2023, the judge entered an order denying the motion for reconsideration, finding "the court has been both understanding and accommodating of the health concerns of counsel. To utilize such concern as a basis for reconsideration is a distortion of the record and wholly inappropriate."

On August 25, Malone moved for summary judgment arguing discovery was completed and plaintiff failed to serve an expert report in support of her claims of legal malpractice. Plaintiff's counsel filed a certification in opposition to the motion. Plaintiff did not file a response to Malone's statement of material facts, a counterstatement of material facts, or a brief.

9

Counsel's certification, dated September 12, 2023, repeated certain allegations made in plaintiff's complaint without citations to the record, and repeated the arguments previously considered and rejected by the presiding judge. Counsel attached the report of a handwriting expert, previously served on May 3, 2023, "who opined that Ambrosio's signature on his expert report [served in the underlying Sarno litigation] was forged." Counsel also attached the report of plaintiff's legal malpractice expert, Jared M. Lans, Esq., dated September 7, 2023, which counsel "received [that day]." Counsel filed a separate certification "pursuant to R[ule] 4:17-7 pertaining to the expert report of [Lans]" contending "the information required for the amendment [to plaintiff's answers to interrogatories] was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date."[1]

On September 22, 2023, after hearing oral argument, a different judge entered an order granting Malone's motion for summary judgment supported by a comprehensive oral opinion. The motion judge found plaintiff's opposition was procedurally deficient because:

> counsel's certification submitted in opposition . . . contains facts that are not within counsel's personal knowledge or factual allegations, which can[not] be considered and totally fails to meet

---

[1] The copy of the certification in the appellate record is unsigned and undated.

10 A-2044-23

Rule 4:46-2, which requires that to present an issue of material fact, you have to comply with the [R]ule.

There should have been a response to the movant's statement of material facts. There was none, so all of those facts are deemed admitted.

[I]f plaintiff wanted to submit a counter statement, [she] was required under the rule to submit a statement of material facts that corresponded to the rule and had citations to the record and attached record exhibits on which [she] relied.

The motion judge noted because the presiding judge denied the motion to extend the DED, "[t]he current state of the case is that there is no [legal malpractice] expert report and no expert report permitted[.]" She found "[t]his is not a common knowledge case," as a "jury could not conclude legal malpractice without [an] expert report."

The motion judge rejected counsel's contention that the Lans report could not have been served before the expiration of the discovery period because "there was nothing in . . . Lans'[s] report relying on facts that occurred recently, and . . . nothing to explain why . . . it was not available." The report "should have been available by the exercise of reasonable diligence earlier, and [she] view[ed] the issue as really an attempt to . . . serve it in defiance of [the presiding judge's] orders." This appeal followed.

## II.

On appeal, plaintiff argues: (1) the judge employed the wrong standard in denying her motion to extend discovery; (2) the judge's failure to find exceptional circumstances was an abuse of discretion; and (3) the motion judge improperly granted summary judgment. Specifically, plaintiff contends: (1) the motion judge erred by refusing to consider Lans's report; (2) the motion judge "entirely ignored" the report of her handwriting expert "that proved . . . Malone forged the signature of . . . Ambrosio in the report he obtained in the underlying action;" (3) Malone "violated RPC 3.3 by his lack of candor;" and (4) "[t]he breach of conduct by [Malone] was so egregious" expert testimony was unnecessary.

## III.

A trial court's discovery rulings are "entitled to substantial deference." DiFiore v. Pezic, 254 N.J. 212, 228 (2023) (citing State v. Stein, 225 N.J. 582, 593 (2016)). We "generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion[,] or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (citing Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)).

A-2044-23

The judge correctly determined plaintiff was obligated to show exceptional circumstances in support of her eighth motion to extend discovery. Rule 4:24-1(c) provides a motion to extend discovery "shall . . . be made returnable prior to the conclusion of the applicable discovery period" and "if good cause is . . . shown, the court shall enter an order extending discovery." However, "[n]o extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown."

Plaintiff's motion to extend discovery was filed on June 21, 2023, after trial dates were fixed in the September 9, 2022 and March 23, 2023 orders. As expressly set forth in Rule 4:24-1(c), because a trial date was fixed, no extension of the DED was permitted absent a showing of exceptional circumstances.

Plaintiff's reliance on Hollywood Café is unavailing for two reasons. First, the exceptional circumstances standard applied to her motion to extend because it was untimely. Rule 4:24-1(c) requires a motion to extend be "made returnable prior to the conclusion of the applicable discovery period." Plaintiff's motion was filed on June 21, after the discovery period expired on June 20, and was not returnable until July 7.[2] In Hollywood Café, we determined when, as

---

[2] Plaintiff appears to argue the motion was timely because the judge did not set a new DED in the July 7 order. That argument is without merit. The July 7

here, the moving party seeks an extension after the discovery period has ended and after a trial date has been set, the court may grant the extension only upon a showing of exceptional circumstances.  473 N.J. Super. at 217.

Second, even if the motion was timely filed, Hollywood Café does not mandate application of the good cause standard under the facts of this case.  In Hollywood Café, the court "sent the parties notice that trial was set" prior to the expiration of the initial period of discovery set forth in Rule 4:24-1(a).  Id. at 214.  We noted the administrative "practice of sending out arbitration and trial notices before the end of discovery . . . causes obvious tension among a series of rules designed to foster trial date certainty."  Id. at 220. We concluded "when the court chooses to send out arbitration and trial notices during the discovery period, judges evaluating a timely motion to extend discovery may not utilize the exceptional circumstances standard."  Ibid.

Plaintiff misinterprets Hollywood Café and misconstrues its applicability to this case.  Unlike the administrative notice sent in Hollywood Café, here trial dates were set in the sixth and seventh DED extension orders entered by judges

---

order plainly established June 20, 2023, as the final day for discovery.  Even if the DED was not administratively adjusted, which we cannot determine from the record before us, the applicable discovery period was established in the July 7 order, and it concluded on June 20.

A-2044-23

who were responsible for the management of the case. Nothing in our decision in <u>Hollywood Café</u> is intended to minimize the significance and effect of trial dates set by judges in discovery extension or case management orders. <u>Hollywood Café</u> applies only when an arbitration or trial date is set by notice sent as an administrative tool prior to the conclusion of discovery. We hold that when a motion to extend discovery is filed after a judge sets an arbitration or trial date in a DED extension or case management order entered after expiration of the applicable initial period of discovery set forth in <u>Rule</u> 4:24-1(a), the exceptional circumstances test applies.[3]

We are satisfied the judge did not misapply his discretion by finding plaintiff failed to show exceptional circumstances. Under the exceptional circumstances standard, the movant must demonstrate:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the

---

[3] In <u>Hollywood Café</u>, we recognized "a court could render meaningless the 'good cause' standard applicable to motions to extend discovery that are timely filed . . . by simply assigning an arbitration or trial date <u>early</u> in the litigation." 473 N.J. Super. at 218 (emphasis added). We are confident, however, judges will not misapply their discretion by setting arbitration or trial dates before it would be appropriate to do so. As in this case, for example, where the court did not set a trial date until the sixth order extending discovery.

circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Hollywood Café, 473 N.J. Super. at 217 (emphasis omitted) (quoting Rivers, 378 N.J. Super. at 79).]

The judge properly considered the relevant factors and determined plaintiff failed to show exceptional circumstances. Contrary to plaintiff's claim, the judge did not disregard counsel's medical condition. Rather, he and the judge who granted prior discovery extensions attempted to accommodate counsel's needs by granting seven discovery extensions and twice adjourning the trial date. Moreover, the judge also found the delays in the case were the fault of "a client who certainly did not want to proceed . . . with any sense of urgency . . . and created continuing delays for all involved," including by failing to "comply and cooperate with the scheduling of depositions." There is no basis for us to disturb the judge's decision.

IV.

We are convinced the motion judge correctly granted summary judgment. Our review of a trial court's grant or denial of a motion for summary judgment is de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Like the trial court, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a

16

rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where [a] party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, 142 N.J. at 529 (emphasis omitted).

Pursuant to Rule 4:46-2(a), a party moving for summary judgment must file a "statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted." Rule 4:46-2(b) mandates "a party opposing the motion shall file a responding statement either admitting or disputing each of the facts in the movant's statement." "[A]ll material facts in the movant's statement which are sufficiently supported will be deemed admitted . . . unless specifically disputed by citation [to the portion of the motion record] demonstrating the existence of a genuine issue as to the fact." Ibid. "An opposing party may also include in the responding statement additional facts that the party contends are material and as to which there exists a genuine issue[,]" "together with citations to the motion record." Ibid.

Rule 4:46-5(a) provides "an adverse party may not rest upon the mere allegations or denials [in] the pleading[s], but must respond by affidavits meeting the requirements of R[ule] 1:6-6[4] . . . setting forth specific facts showing that there is a genuine issue for trial." Mere annexation to the response to the motion of an exhibit list or the exhibits themselves, without more, does not constitute compliance with the rule. Lyons v. Twp. of Wayne, 185 N.J. 426, 435 (2005). The party opposing the motion has the affirmative duty of responding in accordance with the rule. Polzo v. Cnty. of Essex, 196 N.J. 569, 586 (2008).

We are unpersuaded by plaintiff's claim that the motion judge failed to consider the legal malpractice expert report prepared by Lans and served for the first time in opposition to Malone's motion. That report was served on September 12, 2023, more than four months after the May 4, 2023 deadline passed for plaintiff's expert reports, nearly three months after the end of discovery, and in direct contravention of the presiding judge's July 7 order. As the motion judge aptly noted, under "[t]he current state of the case . . . [plaintiff

---

[4] Rule 1:6-6 states affidavits must be "made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify."

did not have a legal malpractice] expert report and no expert report [was] permitted."

She correctly determined plaintiff's opposition to Malone's motion for summary judgment was fatally defective. Plaintiff did not file a response to the statement of material facts or a counterstatement of material facts as required by <u>Rule</u> 4:46-2(a) and (b). The certification counsel filed merely repeated allegations set forth in plaintiff's complaint to which he was not competent to testify without citation to evidence in the record in violation of <u>Rule</u> 1:6-6 and <u>Rule</u> 4:46-2(b).

In addition, the motion judge correctly found Malone was entitled to summary judgment because "[t]his is not a common knowledge case" and "a jury could not conclude legal malpractice without [expert testimony]." This case involves complex claims of legal malpractice. They include claims relating to the underlying matrimonial litigation handled by Sarno, the subsequent litigation of a claim of malpractice allegedly committed by Malone while pursuing a claim against Sarno, alleged conflicts of interest created by Malone, and plaintiff's settlement of both underlying actions, including her understanding of the tax consequences of the settlements based on allegedly improper tax advice from Malone.

It is well-settled expert testimony is generally required in legal malpractice cases. <u>Buchanan v. Leonard</u>, 428 N.J. Super. 277, 288 (App. Div. 2012) (noting "'the duties a lawyer owes to [a] client are not known by the average juror[.]'") (quoting <u>Carbis Sales, Inc. v. Eisenberg</u>, 397 N.J. Super. 64, 78 (App. Div. 2007)). Without expert testimony, plaintiff's legal malpractice claims against Malone failed as a matter of law.

Plaintiff's contention the motion judge "entirely ignored" the report of her handwriting expert "that proved . . . Malone forged the signature of . . . Ambrosio in the report he obtained in the underlying action" lacks merit. In fact, no such argument was made in opposition to Malone's motion. Rather, plaintiff argued her handwriting expert opined Ambrosio's signature may have been forged, not that it was forged by Malone. Plaintiff's claim Malone forged the signature finds no support in the report of her handwriting expert or any other competent evidence properly identified in opposition to Malone's motion for summary judgment.

To the extent we have not specifically addressed any of plaintiff's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

20                                                                      A-2044-23